ELSIE RODRÍGUEZ RETAMAR, Plaintiff and Appellee, *v.* DR. ANTONIO MALDONADO, Defendant and Appellant [Petitioner].

No. O-71-58.    Decided May 3, 1972.

*Charles R. Cuprill* for appellant. *Héctor Lugo Bougal, Delia María Auffant,* and *Delia Lugo Bougal* for appellee.

PER CURIAM: The appellant dentist was sued for damages for an alleged undue and unnecessary extraction of two molars from appellee's mouth for which the District Court, Ponce Part, held him liable for the amount of $2,200.

The Superior Court, Ponce Part, dismissed appellant's appeal because the record of the case "shows that . . . the damages sustained by the plaintiff-appellee originated in the professional negligence of the defendant . . . there is nothing to justify disturbing the findings of the trial court."

■ We should consider the foregoing adjudications in the light of the rules which with regard to the rendering of medical services we set forth in *Rivera* v. *Commonwealth*, 99 P.R.R. 864 (1971), rules which also apply to dentists. *Guzmán* v. *Silén*, 86 P.R.R. 504 (1962).

■ Since the evidence has not shown that appellant's acts violated the aforementioned rules, the complaint in the instant case cannot prosper and by virtue thereof, the judgment rendered by the Superior Court on February 4, 1971, which dismissed the appeal from the judgment rendered by the District Court, Ponce Part, on May 18, 1970, should be set aside. The latter should be reversed.

The District Court concluded, in synthesis, that:

1.—In March 1968, appellee went to appellant because she was suffering an intense pain on the right side of her face. After taking an X ray he extracted a molar and since the pain continued, days later, that same month, he extracted another. Since the pain continued she went back to appellant but the latter refused to take care of her.

2.—Then in April 1968 appellee requested the services of the dental surgeon, Dr. Meléndez, who testified that the X ray which he took of her mouth revealed (a) that one of her wisdom teeth was impacted, thing which causes great pain; (b) that two of her molars had been extracted not more than two months before; he treated her, but on July 15, 1968, he was forced to extract the wisdom tooth; (c) that appellee's denture was in excellent condition.

3.—On the grounds of Dr. Meléndez' testimony the two molars which were extracted were in good condition.

4.—Appellant's intervention aggravated and caused damages to appellee, damages which arose from appellant's original negligence and which were subsequently corrected by Dr. Meléndez' intervention, thus rendering appellant liable for the damages sustained by appellee consisting of intense physical pain, as well as mental and moral anguish.

5.—As a question of fact that the damages sustained by appellee were the result of appellant's negligence, lack of care, and unskillfulness, he failed to properly take appellee's X ray, thing which would have revealed the existence of the wisdom tooth which caused the pain, which in turn caused said appellant to unnecessarily extract two molars from appellee. Likewise, that the appellant was equally negligent by failing to notice that the treatment which he was giving to appellee did not yield favorable results.

During the hearing of the case appellant testified, but his testimony did not deserve any credit whatsoever from the trial court.

■ At the threshold we point out that a great part of the evidence consists of the testimony of expert dentists. So that in weighing it we are in no manner whatsoever restrained by the judgment of the District Court to the effect that appellant's testimony in his expert capacity did not deserve any credit whatsoever. We said in *Concepción Guzmán* v. *Water Resources Authority*, 92 P.R.R. 473, 480 (1965), that ". . . this Court is free to adopt its own judgment in the weighing of expert testimony."

The court in its conclusions does not make any reference whatsoever to the testimony of the expert Dr. Meléndez in his cross-examination to the effect that he did not know anything concerning the extraction of the molars; that he never saw the molars extracted by appellant; he did not know their condition and that he could not tell whether the pain which appellee felt when she went to see appellant was caused by the wisdom tooth or by the molars because that was very difficult[1] and that the pain could have been on other teeth as well as on the wisdom tooth.[2]

---

[1] These statements appear in the bill of exceptions to the Statement of the Case, exceptions which the District Court accepted after a hearing, through its order of September 11, 1970.

[2] It is necessary to note that the recording tapes of the hearing of the

According to the statement of the case made by the District trial judge, appellant testified that ". . . she came to request my services, she said that she had an intense pain on the lower right side of her face, after I made the routine tests, tests which we all do I should say, such as taking X rays,[3] make a percussion test, this consists of tapping the tooth which one suspects at the time, after making certain technical tests, which consists of heat and cold, I reached the conclusion that the first molar on this lower right side presented an obturation in gold, a filling. Before this clinical situation . . . and using my knowledge in all good faith, I decided and reached the conclusion that my diagnosis was that the extraction of that molar was the solution to the intense pain, it would soothe the intense pain which the patient felt at that time." With regard to the second extraction appellant testified that "On that date she was again in pain . . . on that lower right side regarding which, after different tests, I reached the conclusion, and with her consent I extracted that tooth, the second molar. That second molar presented an obturation in silver, it was rather deep . . . I was forced to extract that molar . . . I made the routine tests . . . we reached the conclusion that that second molar was what was causing the pain at that time." Later he testified

---

case on the merits in the District Court which were requested, turned out to be unintelligible. Undoubtedly, the person in charge of controlling the tape recorder was negligent in failing to transfer the recording tape at the end of each reel to its original reel so that when placed on another machine the recording could be understood. The Court Administration should call the attention of the persons in charge of the recordings in the Courts of First Instance so that they follow the practice we just explained as well as that of making periodical tests during the recording for the purpose of verifying the fidelity of the recording which is being carried out.

[3] It is important to note that appellee, who had the burden of proof, did not request appellant to bring and identify those X rays for it is possible that they could contain some indication concerning the condition of the two molars which appellant extracted from appellee.

that "Three or four days later she telephoned me, and complained that she was confined in bed and that she had an intense pain on that side, reason for which I went to her house, to her sick bed and I found, after I examined her mouth, I found that what she presented was a typical case of localized alveolitis, which is a situation . . . . Alveolitis is an infection of the alveolus, that is, where the molar was encrusted, that for some reason or other, and so far it has been impossible to specify the reasons, the patient loses the clot or the blood doesn't clot in the first stage of the cicatrization of every injury in any plant or animal body, and for some reason or other it loses that clot, it washes away with the buccal fluids and the alveolus remains exposed to the buccal bacteria and then a necrosis appears, a localized osteomyelitis, that there is nothing as painful as that . . . . I prescribed analgesic sedatives and then I told her to come and see me, because that required a treatment in my office, to which she never came." He also explained, that he had noticed the wisdom tooth, but that when he made the extractions, the latter was not impacted but it was breaking through ". . . it was covered with the gums in the occlusal part"; that Dr. Meléndez' X rays did not show any impediment whatsoever preventing the wisdom tooth from breaking through, and he added ". . . Only the gums and physiology explains that it is going to break through."

Appellant testified that according to his record of appointments admitted in evidence, he performed the first extraction on September 22, 1967, and the second on March 28, 1968. The most reliable evidence, in our opinion, is that there was this lapse of about six months between these extractions. While appellee does not remember the day in March 1968 when the first extraction was made, appellant's record shows that during that month only the second extraction was made; that the first was performed on September 22, 1967. In support of the date of the first extraction, appellant testified that from

Dr. Meléndez' X ray it appears ". . . a cicatrization, the distance from the wisdom tooth to the second premolar, of the smaller side . . . . It is inconceivable, if we measure, that two teeth fit in that place, to what I testify that it is impossible that I could have made one extraction and then, immediately the other, as it is specified in plaintiff's statement, since, according to the human physiology, all the pieces tend to move towards the midspinal line or the line at the center of the human skeleton, they all tend towards that line, therefore on this date Dr. Meléndez took the X rays, that was supposed to be on April 19, and I don't remember anything else. The wisdom tooth had emigrated so much towards this side that it is impossible that there had been two other pieces recently before, that is, that it took six different months, a lot more than six months from one extraction to the other."

█ There was no evidence to show that the treatment which appellant administered to appellee according to his former testimony was another treatment or that it was a substantially different one.

There was no evidence either to the effect that appellant's treatment which culminated in the two extractions (1) was inappropriate, negligent, inadequate, and that it showed failure to exercise a degree of reasonable care; (2) not in accordance with the practice prevailing in the community, that is to say, that it does not meet the acknowledged professional requirements, that is, the acceptable practice professionally speaking as to cases like the one under our consideration.

So that the presumption that reasonable care was exercised in the performance of appellant's duties in the instant case has not been overcome. As we said in *Ramos Orengo* v. *Government of the Capital*, 88 P.R.R. 306, 318 (1963), the evidence should have established, and it failed to do so in the instant case, that there was something more

than a mere possibility that the damage was due to the dentist's failure to do his duty.

■ The conclusion of the District Court that "Undoubtedly, in plaintiff's case the pain which she felt was connected with the wisdom tooth" does not find support in the evidence, but it can only be inferred from mere possibilities, conjectures, and suspicions. Appellee's expert could not assert that the pain caused by the wisdom tooth was the pain appellee felt when she went to appellant for treatment. On the contrary he testified that it was very difficult to state from where did that pain come, whether from the wisdom tooth or from the extracted molars. The fact that appellee continued feeling pain on the right side of the face even after the second extraction and that the pain which took her to see Dr. Meléndez ceased when the latter extracted the wisdom tooth, is not, by itself, proof that appellant did not find through his examination that the case demanded the extraction of the two molars in question and that appellant was guilty of a poor, negligent, and careless professional practice. As far as the wisdom tooth is concerned, appellee's expert testified that he found it to be impacted, that is to say, covered with mandibular bone, reason for which it could not break through; that in this case it had to be extracted since it causes great pain. On the contrary, appellant, testifying as his own expert, said that he noticed the wisdom tooth when he treated appellee in regard to the first extraction.

Within the possibilities and presumptions prevailing in the instant case, since the experts did not fully clarify the question, there are three possibilities, that is, that appellee only suffered from one pain arising from an impacted wisdom tooth, or from other pains arising from sick molars, or from pains caused by the wisdom tooth and by the two pieces which appellant extracted which required the three extractions performed on her as a whole.

Since it does not lie to hold appellant liable on the basis of mere possibilities, the judgments rendered in the instant case by the Superior Court and by the District Court, Ponce Parts, should be reversed and the complaint dismissed.

Mr. Chief Justice Negrón Fernández took no part in the decision of this case.

